**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| LUCAS K. JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 3:18-cv-2431-M |
| U.S. DEPARTMENT OF | ) |
| TRANSPORTATION, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

**DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY,
MOTION TO TRANSFER VENUE**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 1

ARGUMENT ....................................................................................................................... 4

    I.   The Only Proper Defendant Is the Secretary of the Department of Transportation .......... 4

    II.  Venue Is Not Proper in This Judicial District .................................................... 5

    III. Even If Venue in This Court Were Available, Transfer Is Warranted. ............................. 8

        A.  This Case Should Be Transferred to the Court Handling the First-Filed Case............. 8

        B.  Alternatively, This Case Should Be Transferred Under 28 U.S.C. 1404(a)............... 11

CONCLUSION.................................................................................................................... 15

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Am. Home Mortg. Servicing, Inc. v. Triad Guar. Ins. Corp.*,
 714 F. Supp. 2d 648 (N.D. Tex. 2010) ..................................................................... 9

*Bedrock Logistics, LLC v. Braintree Labs., Inc.*,
 No. 3:16-cv-2815-M, 2017 WL 1547013 (N.D. Tex. Apr. 28, 2017) ....................... 13

*Blackberry Limited v. Avaya, Inc.*,
 No. 3:16-cv-2185-M, 2017 WL 4512835 (N.D. Tex. Oct. 10, 2017)................... 11, 12

*Brocq v. Lane*,
 No. 3:16-CV-2832-D, 2017 WL 1281129 (N.D. Tex. Apr. 6, 2017) .............................. 8, 9, 11

*Buyze v. Mukasey*,
 No. 3:07-CV-1191-M, 2008 WL 904718 (N.D. Tex. Mar. 31, 2008)..................... 5, 7

*Cadle Co. v. Whataburger of Alice, Inc.*,
 174 F.3d 599 (5th Cir. 1999) ............................................................................ 8, 11

*Carter v. Target Corp.*,
 541 F. App'x 413 (5th Cir. 2013) ............................................................................. 7

*Collins v. Morgan Stanley Dean Witter*,
 224 F.3d 496 (5th Cir. 2000) .................................................................................... 7

*Emelike v. L-3 Comm'cns Corp.*,
 No. 3:12–cv–2470, 2013 WL 1890289 (N.D. Tex. May 7, 2013)............................. 5

*Honeycutt v. Long*,
 861 F.2d 1346 (5th Cir. 1988) .................................................................................. 4

*In re Volkswagen Am., Inc.*,
 545 F.3d 304 (5th Cir. 2008) .................................................................................. 11

*Jefferson v. Mae*,
 No. 3:14-CV-00917-N-BK, 2014 WL 12639946 (N.D. Tex. Sept. 4, 2014) ............ 6

*KAL Drilling, Inc. v. Star of Texas Energy Servs. Inc.*,
 No. A-07-CA-319, 2007 WL 9701456 (W.D. Tex. Aug. 24, 2007)........................ 10

*Kapche v. Gonzalez*,
 No. V-07-31, 2007 WL 3270393 (S.D. Tex. Nov. 2, 2007)................................. 6, 7

*Lightbeam Health Solutions, Inc., v. Tidewater Physicians Multispecialty Grp. PC*,
 No. 3:17-cv-0395-M, 2017 WL 3382458 (N.D. Tex. Aug. 7, 2017) ...................... 14

*McCormick v. Payne*,
No. 3:15-cv-02729-M, 2015 WL 7424772 (N.D. Tex. Nov. 23, 2015) ................................... 8

*Moss v. Lockheed Martin Corp.*,
No. 3:10-cv-1659, 2011 WL 197624 (N.D. Tex. Jan. 18, 2011) ............................................. 12

*Olaoye v. Wells Fargo Bank, NA*,
No. 3:12–CV–4873-M, 2013 WL 5422888 (N.D. Tex. Sept. 27, 2013) .................................. 8

*Paragon Indus., L.P. v. Denver Glass Machinery, Inc.*,
No. 3:07-CV-2183-M, 2008 WL 3890495 (N.D. Tex. 2008) .......................................... 14, 15

*Raz Imports, Inc. v. Luminara Worldwide, LLC*,
No. 3:15-CV-02223-M, 2015 WL 6692107 (N.D. Tex. Nov. 3, 2015) ...................... 12, 13, 14

*Rich v. Texas Dep't of Crim. Justice*,
No. H-15-1439, 2016 WL 2758030 (S.D. Tex. May 12, 2016) ................................................ 5

*RLI Ins. Co. v. Allstate County Mut. Ins. Co.*,
No. 3:07-cv-1256-M, 2008 WL 2201976 (N.D. Tex. May 28, 2008) .................................... 13

*Strukmyer v. Infinite Fin. Solutions*, Inc.,
No. 3:13–cv–3798–L, 2013 WL 6388563 (N.D. Tex. Dec. 5, 2013) ..................................... 11

*Technology Ins. Co. v. Ben E. Keith Co.*,
No. 3:14–CV–3476–B, 2015 WL 4367597 (N.D. Tex. July 15, 2015) ............................... 9, 10

*Vasser v. McDonald*,
72 F. Supp. 3d 269 (D.D.C. 2014) ........................................................................................... 6

*Victaulic Co. v. Romar Supply, Inc.*,
No. 3:13–CV–02760–K, 2013 WL 6027745 (N.D. Tex. Nov. 14, 2013) ............................... 11

*Wells Fargo Bank, N.A. v. W. Coast Life Ins. Co.*,
631 F. Supp. 2d 844 (N.D. Tex. 2009) ............................................................................... 8, 10

*Whipstock v. Raytheon Co.*,
No. 07-11137, 2007 WL 2318745 (E.D. Mich. Aug. 10, 2007) ............................................. 6

## **Statutes**

5 U.S.C. § 105 ........................................................................................................................... 4

28 U.S.C. § 1404(a) ......................................................................................................... 1, 11, 12

28 U.S.C. § 1406(a) ................................................................................................................. 1, 7

42 U.S.C. § 2000e-5(f)(3) ...................................................................................................... 5, 6, 7

iv

42 U.S.C. § 2000e-16(c) .................................................................................................... 4

**Rules**

Federal Rule of Civil Procedure 12(b)(3) ......................................................................... 1

Federal Rule of Civil Procedure 12(b)(6) ..................................................................... 1, 7

## Other Authorities

United States Courts, *Federal Judicial Caseload Statistics 2018*,
 https://www.uscourts.gov/federal-judicial-caseload-statistics-2018-tables................................14

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 12(b)(3) and (b)(6), along with 28 U.S.C. §§ 1404(a) and 1406(a), the United States Department of Transportation ("DOT"), the Federal Aviation Administration ("FAA"), and the heads of those agencies (collectively, "Defendants") bring this motion to dismiss or transfer this case to the U.S. District Court for the District of Columbia ("District of Columbia").

First, three of the Defendants must be dismissed because only the Secretary of Transportation is a proper defendant for an action under Title VII of the Civil Rights Act. Second, dismissal or transfer of the above-captioned action is required because (1) venue is improper in this Court but proper in the District of Columbia, (2) this new putative class action challenges the same legal action and presents overlapping legal issues as a pending putative class action entitled *Brigida v. Chao*, No. 1:16-cv-02227 (D.D.C.), and (3) transfer to the court handling the first-filed matter will promote the just and efficient conduct of the litigation, avoiding duplicative proceedings in different federal courts.

## BACKGROUND

These lawsuits concern changes the FAA made to its process for hiring air traffic control specialists—changes that, according to Plaintiffs in both cases, unlawfully discriminated against them and putative classes they seek to represent.

Historically, the FAA has hired candidates to become air traffic control specialists ("ATCS" or "controllers") from various sources, including among others: (1) veterans with air traffic control experience attained during military service, (2) graduates of programs accredited under the FAA's Collegiate Training Initiative ("CTI") program, and (3) members of the general public who may have no prior training or experience in air traffic control. *See* 1st Am. Compl. ¶

14, ECF No. 10; 3d Am. Compl. ("*Brigida* Compl.") ¶¶ 32-33, 35, *Brigida v. Chao*, No. 16-2227 (D.D.C. Oct. 23, 2018), ECF No. 68.  In advance of a controller vacancy announcement in 2014, the FAA advised that, rather than using separate hiring processes predicated on distinguishing among categories of sources, "a single vacancy announcement will be used for all applicant sources" and "[a]ll applicants will be evaluated against the same set of qualification standards." 1st Am. Compl., Ex. 1, Email from Joseph Teixeira at 2, Dec. 30, 2013.  In addition to instituting uniform qualification standards, the FAA advised it was implementing a revised testing process that applicants must pass in order to be further considered for selection.  *Id.*

Previously, certain applicants were required to take and pass the FAA's Air Traffic Selection and Training ("AT-SAT") test in order to be eligible for hiring as a trainee controller. *See* 1st Am. Compl. ¶ 13; *Brigida* Compl. ¶¶ 25, 28.  Under vacancy announcement FAA-AMC-14-ALLSRCE-33537 ("2014 announcement"), all applicants would be required first to pass a new online screening tool called the biographical assessment (sometimes referred to as the "biographical questionnaire") in order to be eligible then to take the AT-SAT exam.  1st Am. Compl., Ex. 1 at 2.  The FAA advised that, based on the uniform qualification standards and uniform testing process, "a single nationwide referral list will be generated containing all candidates who meet the qualification standards and pass the assessments," from which selections would be made according to "grouping candidates by assessment scores and veteran's preference."  *Id.*

Both Lucas Johnson, the Plaintiff here, and Andrew Brigida, plaintiff in the pre-existing lawsuit, allege that as graduates of CTI programs, they had a leg up under the FAA's pre-2014 application process.  *See* 1st Am. Compl. ¶¶ 14, 138; *Brigida* Compl. ¶¶ 77-79.  Both Mr. Johnson and Mr. Brigida took the biographical assessment in February 2014, and neither of them

received a passing score.  *See* 1st Am. Compl. ¶¶ 141-142; *Brigida* Compl. ¶¶ 82, 84.

Accordingly, neither of them was selected for further consideration in the application process.

*See* 1st Am. Compl. ¶ 143; *Brigida* Compl. ¶ 84.  Both have now filed lawsuits challenging the

2014 changes to the FAA's application process.

On December 30, 2015, Mr. Brigida filed a class action lawsuit in the District of Arizona

claiming that he and a class of similarly situated individuals suffered unlawful discrimination

when the FAA changed its process for hiring air traffic control specialists.  Original Compl. ¶¶

80-83, *Brigida v. U.S. Dep't of Transp.*, No. 2:15-cv-2654 (D. Ariz.).  As explained in his most

recent amended complaint, Mr. Brigida alleged that, via the 2014 vacancy announcement, the

FAA impermissibly "adopted a new hiring practice for Air Traffic Controllers with the intent and

purpose of increasing the racial diversity of Air Traffic Controller applicants."  *See Brigida*

Compl. ¶ 118.  Mr. Brigida alleges that adoption of the new hiring process constitutes race

discrimination, for which he seeks relief under Title VII of the Civil Rights Act of 1964.  *Id.* ¶¶

118-23.  Mr. Brigida seeks a declaration that the FAA acted unlawfully, an injunction directing

the FAA to give hiring preference to him and the putative class, and damages.  *See id.* ¶¶ 122-23,

prayer for relief.  Mr. Brigida seeks to represent a class of approximately 2,000-3,500 CTI

graduates that had passed the pre-2014 AT-SAT but had to take the biographical assessment in

2014 or 2015 to be considered under FAA's new process.  *Id.* ¶¶ 67, 109-10, 112.  Mr. Brigida's

lawsuit was transferred to the District of Columbia, and is currently pending before Judge

Dabney Friedrich.  *See* Order, *Brigida v. U.S. Dep't of Transp.* (D. Ariz. Nov. 7, 2016), ECF No.

33.  Mr. Brigida filed a motion for class certification on November 12, 2018.  *See* Pls.' Mot. for

Class Certification, ECF No. 73, *Brigida v. Chao*, No. 16-2227 (D.D.C. Nov. 12, 2018).

On September 12, 2018, Mr. Johnson filed the above-captioned class action lawsuit. *See* Compl., ECF No. 2. On December 5, 2018, Mr. Johnson filed an amended complaint. *See* 1st Am. Compl., ECF No. 10. Like Mr. Brigida, Mr. Johnson alleges that he and a class of similarly situated individuals suffered unlawful discrimination due to the FAA's 2014 process for hiring air traffic control specialists. 1st Am. Compl. ¶¶ 152-57. His core allegation is that the biographical assessment was "biased, non-validated," and used "to improperly screen applicants . . . by race and national origin." *Id.* ¶ 153(a). He also claims that there was illegal assistance to a "special interest group" for African American applicants. *Id.* ¶ 153(b), (c). His alternative theory is that the FAA's 2014 process had a disparate impact on all non-African American applicants. *Id.* ¶ 161. Accordingly, he seeks to represent a class of all non-African Americans who unsuccessfully took the biographical assessment in 2014—which he estimates to include more than 20,000 people. *Id.* ¶¶ 125, 130. He seeks relief under Title VII of the Civil Rights Act of 1964, including damages and declaratory and injunctive relief. *Id.* prayer for relief ¶¶ A-M.

## ARGUMENT

## I.    The Only Proper Defendant Is the Secretary of the Department of Transportation

The only proper defendant in a Title VII action by a federal employee or applicant is the "head of the department, agency, or unit, as appropriate." 42 U.S.C. § 2000e-16(c); *Honeycutt v. Long*, 861 F.2d 1346, 1349 (5th Cir. 1988). Section 2000e-16(a) incorporates the definition of "executive agency" set forth in 5 U.S.C. § 105, which includes "executive department[s]," not their components. *See Honeycutt*, 861 F.2d at 1349 (holding that plaintiff "incorrectly sued the wrong party" by naming head of "a part of the Department of Defense" rather than the Secretary of Defense). Accordingly, the Court should dismiss the agencies themselves—the U.S. Department of Transportation ("DOT") and the Federal Aviation Administration ("FAA")—

along with Daniel K. Elwell, the Acting FAA Administrator.  *See* 1st Am. Compl. ¶¶ 2, 4-5, ECF

No. 10; *Buyze v. Mukasey*, No. 3:07-CV-1191-M, 2008 WL 904718, at *4 (N.D. Tex. Mar. 31,

2008).  The only proper, remaining defendant is the Secretary of Transportation.

## II.    Venue Is Not Proper in This Judicial District

"[V]enue in a Title VII action is proper only in the judicial districts that satisfy one of the

criteria of [42 U.S.C.] § 2000e-5(f)(3)."  *Emelike v. L-3 Comm'cns Corp.*, No. 3:12–cv–2470,

2013 WL 1890289, at *2 (N.D. Tex. May 7, 2013); *see also Rich v. Texas Dep't of Crim. Justice*,

No. H-15-1439, 2016 WL 2758030, at *4 (S.D. Tex. May 12, 2016) ("The provisions of 42

U.S.C. § 2000e-5(f)(3) are both mandatory and explicit." (quotation marks and citation

omitted)).[1]  The Title VII venue provision states:

> [A]n action may be brought in any judicial district in the State in which the
> unlawful employment practice is alleged to have been committed, in the judicial
> district in which the employment records relevant to such practice are maintained
> and administered, or in the judicial district in which the aggrieved person would
> have worked but for the alleged unlawful employment practice[.]"

42 U.S.C. § 2000e-5(f)(3).[2]  It is Plaintiff's burden to establish that venue is proper.  *Emelike*,

2013 WL 1890289, at *1.  Here, Plaintiff cannot carry his burden because none of these prongs

authorizes venue in the Northern District of Texas for his claims.  Indeed, the only apparent

connection to the Northern District of Texas is that Plaintiff currently resides in Dallas, Texas.

First, Texas is not where "the unlawful employment practice is alleged to have been

committed."  42 U.S.C. § 2000e-5(f)(3).  The decision to adopt the processes employed for

"vacancy announcement FAA-AMC-14-ALLSRCE-33537," 1st Am. Compl. ¶¶ 153, 161, was

---

[1] Hereinafter, internal citations, alternations, and quotation marks are omitted unless otherwise noted.

[2] The Title VII venue statute further provides that "if the respondent is not found within any such district, such an
action may be brought within the judicial district in which the respondent has his principal office." 42 U.S.C. §
2000e-5(f)(3). This provision is inapplicable here, but even if it were applicable, the Secretary of Transportation has
her principal office in Washington, D.C., not Texas.  *See* App. 003 ¶ 4.

made in Washington, D.C.  *See* Declaration of M. Renee Coates ¶¶ 12-13, App. 005.[3]  Plaintiff

makes no allegation of any discriminatory action occurring in Texas.  Accordingly, venue based

on the location of the alleged unlawful practice does not lie in Texas.  *Cf. Vasser v. McDonald*,

72 F. Supp. 3d 269, 277-79 (D.D.C. 2014) (holding that this prong provided venue only where

the decisionmaker took his actions, even though part of the administrative process for the

application occurred in another state); *Kapche v. Gonzalez*, No. V-07-31, 2007 WL 3270393, at

*4 n. 4 (S.D. Tex. Nov. 2, 2007)  ("Under the plain language of section 2000e-5(f)(3), the

location where improper discriminatory conduct occurs rather than where its effects are felt is

where venue properly lies."); *Whipstock v. Raytheon Co.*, No. 07-11137, 2007 WL 2318745, at

*3-4 (E.D. Mich. Aug. 10, 2007) (holding that this prong provided venue where decision was

made, not the location from which plaintiff applied, from which he participated in a telephone

interview, or from which he received a rejection call).

Second, Texas is not where "the employment records relevant to such practice are

maintained and administered." 42 U.S.C. § 2000e-5(f)(3).  Rather, records relevant to the FAA's

alleged decision to "require[ applicants] to take the [biographical assessment] which was

intentionally used as a screening tool by FAA," 1st Am. Compl. ¶ 126, are primarily maintained

and administered in Washington, D.C., where the FAA is headquartered.  *See* App. 005 ¶¶ 10-13.

Records of the FAA's work in this respect are not maintained and administered in Texas, and

records relating to FAA's decisions regarding controller hiring policies and procedures generally

are not maintained and administered in Texas.  *See id.*  This prong therefore does not support

venue in this district.

---

[3] It is appropriate to consider declarations "in deciding whether to transfer a case to another district court."  *Jefferson v. Mae*, No. 3:14-CV-00917-N-BK, 2014 WL 12639946, at *2 (N.D. Tex. Sept. 4, 2014).

Third, Plaintiff cannot demonstrate that the Northern District of Texas is where he "would have worked but for the alleged unlawful employment practice." 42 U.S.C. § 2000e-5(f)(3). Plaintiff does not and cannot allege that, if he had been hired as a trainee air traffic controller, his place of employment would have been Texas. To the contrary, the FAA places trainees at air traffic control facilities nationwide, and Mr. Johnson could not have dictated assignment in Texas. *See* App. 004 ¶ 8.[4] In any event, Mr. Johnson's first preference for geographic region did not include Texas, nor did not specific list the state of Texas as a location in which he wished to work; moreover, at the time of applying it appears that Plaintiff lived and worked in Indiana. *See id.* & App. 006, 009. Under such circumstances, it "would amount to improper speculation" to conclude that Mr. Johnson would have worked in Texas. *Kapche*, 2007 WL 3270393, at *5. Accordingly, this prong does not support venue in this district.

Rather than proceeding in the Northern District of Texas, venue would be proper in the District of Columbia—where "the unlawful employment practice is alleged to have been committed" and where "employment records relevant to such practice are maintained and administered." 42 U.S.C. § 2000e-5(f)(3). The Court may dismiss the case or transfer it to the U.S. District Court for the District of Columbia pursuant to 28 U.S.C. § 1406(a).[5] *See*

---

[4] The application at issue clearly stated:

> "[Geographic] preferences are <u>informational only</u> and are **not** used in the selection process. Your preferences will be considered at time of placement but no guarantees on geographic area preference are made. While your preferences will be taken into consideration, your placement will ultimately be based upon the needs of the FAA."

App. 009. Documents "referred to in the plaintiff's complaint and central to her claim" are appropriate for consideration under Federal Rule of Civil Procedure 12(b)(6). *See Carter v. Target Corp.*, 541 F. App'x 413, 416 (5th Cir. 2013) (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Accordingly, Plaintiff's job application, which is referenced in his complaint, *see* 1st Am. Compl. ¶ 141, can be relied upon without converting this to a motion for summary judgment. *See Buyze*, 2008 WL 904718, at *3 n.2.

[5] 28 U.S.C. § 1406(a) states: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

*McCormick v. Payne*, No. 3:15-cv-02729-M, 2015 WL 7424772, at *3 (N.D. Tex. Nov. 23, 2015) (holding that where venue is improper, § 1406(a) gives a court "broad discretion in determining whether to dismiss or transfer a case in the interest of justice").

## III.    Even If Venue in This Court Were Available, Transfer Is Warranted.

### A.    This Case Should Be Transferred to the Court Handling the First-Filed Case

"Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999). This "discretionary doctrine" rests "on principles of comity and sound judicial administration." *Id.* "Courts use this rule to maximize judicial economy and minimize embarrassing inconsistencies by prophylactically refusing to hear a case raising issues that might substantially duplicate those raised by a case *pending* in another court." *Id.* at 604; *see also Olaoye v. Wells Fargo Bank, NA*, No. 3:12–CV–4873-M, 2013 WL 5422888, at *1 (N.D. Tex. Sept. 27, 2013) (noting that the doctrine is driven by "considerations for not having cases simultaneously pending in two courts"). Under Fifth Circuit precedent, the role of the second-filed court is to determine whether "the likelihood of a substantial overlap between the two suits has been established." *Id.* at 605. If the second-filed court finds "that issues in the suits might substantially overlap, the proper course of action is for the court to transfer the case to the first-filed court to determine which case should, in the interests of sound judicial administration and judicial economy, proceed." *Wells Fargo Bank, N.A. v. W. Coast Life Ins. Co.*, 631 F. Supp. 2d 844, 847 (N.D. Tex. 2009).

"To determine whether the issues substantially overlap, the court examines whether core issues are the same or if much of the proof adduced would likely be identical." *Brocq v. Lane*, No. 3:16-CV-2832-D, 2017 WL 1281129, at *2 (N.D. Tex. Apr. 6, 2017). "[T]he issues

presented and identity of parties in the two cases need not be identical." *Id.* "The two actions only need involve closely related questions or common subject matter." *Technology Ins. Co. v. Ben E. Keith Co.*, No. 3:14–CV–3476–B, 2015 WL 4367597, at *2 (N.D. Tex. July 15, 2015). For example, corresponding threshold issues may be sufficient to establish substantial overlap. *See Am. Home Mortg. Servicing, Inc. v. Triad Guar. Ins. Corp.*, 714 F. Supp. 2d 648, 650-51 (N.D. Tex. 2010).

Plaintiff's claims here substantially overlap with those in the *Brigida* class action. Both cases challenge the same action—FAA's revision of its controller hiring process as applied in February 2014. Ending the legacy process and implementing the new 2014 hiring process were parts of the same set of decisions, as Plaintiff's own allegations demonstrate. *See Brigida* Compl. ¶ 110 ("The FAA instituted a *single decision* to purge the Qualified Applicant Register *and adopt a new hiring practice* for Air Traffic Controllers, which adversely affected all Class members." (emphasis added)); *id.* ¶ 116 ("[T]he primary issue turns upon the FAA's *single decision* to purge the Qualified Applicant Register *and adopt a new hiring practice* for Air Traffic Controllers." (emphasis added); *see also* 1st Am. Compl. ¶ 16 ("[T]he NBCFAE and certain FAA employees persuaded the FAA to purge the qualified applicant register list . . . , implement a non-validated 'Biographical Assessment' ('BA'), eliminate personal interviews, and develop policies and practices where all ATC Applicants were treated as general public hires[.]"). Indeed, plaintiffs' counsel in *Brigida*—who is also Plaintiff's counsel here[6]— acknowledges that the complaints "identify common facts shared between the cases." Pls.' Mot. Class Certification at 26, ECF No. 73-1, *Brigida v. Chao* (D.D.C. Nov. 12, 2018). At least 27

---

[6] Michael Pearson of Curry, Pearson & Wooten is lead counsel here and also the second attorney on the signature block for the Motion for Class Certification in *Brigida*. *See* Pls.' Mot. Class Certification at 26, ECF No. 73-1, *Brigida v. Chao* (D.D.C. Nov. 12, 2018).

paragraphs of the complaints are identical or nearly identical.[7]  *Cf. Wells Fargo Bank*, 631 F. Supp. 2d at 847 (finding substantial overlap in part because "the suits are based on the same life insurance policies, and the same facts surrounding the applications for these policies"); *KAL Drilling, Inc. v. Star of Texas Energy Servs. Inc.*, No. A-07-CA-319, 2007 WL 9701456, at *3 (W.D. Tex. Aug. 24, 2007) (M.J. recommendation), *adopted by* 2007 WL 9701458 (W.D. Tex. Oct. 11, 2007), (finding substantial overlap in part because a case pending in the Northern District of Texas "arises out of the same events which gave rise to the instant lawsuit").

Moreover, both cases raise the same fundamental issue—whether FAA was engaged in intentional discrimination in making the revision.  *Cf. Wells Fargo Bank*, 631 F. Supp. 2d at 847 (finding substantial overlap where both suits involved "the validity of the life insurance policies based on alleged misrepresentations in the applications, and based on the structure of the life insurance policies' ownership and transferability"); *Technology Ins. Co.*, 2015 WL 4367597, at *2 (concluding that "the central issues in the case are the same" because both cases concerned "whether [defendants] were negligent in the events surrounding the September 14, 2013 [car] accident").  And both cases challenge the validity of the 2014 biographical assessment.  *See* 1st Am. Compl. ¶¶ 90-122, 141-50, 153; *Brigida* Compl. ¶ 52.  Accordingly, "much of the proof

---

[7] *See, e.g.*, *Brigida* Compl. ¶ 58 ("On information and belief, and after a reasonable opportunity for discovery, several members of the FAA HR and CR Offices had been working with the NBCFAE to eliminate the CTI Qualified Applicant Register since 2010."); 1st Am. Compl. ¶ 77 ("Several members of the FAA Human Resources and Civil Rights Offices had been working with the NBCFAE to change the air traffic controller hiring process since 2010.").  In addition, the following paragraphs are also essentially the same:

| *Brigida* | 26 | 27 | 28 | 30 | 32 | 38 | 39 | 42 | 48 | 49 | 50 | 51 | 52 | 54 | 55 | 56 | 57 | 59 | 60 | 61 | 62 | 63 | 64 | 65 | 66 | 113 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| *Johnson* | 56 | 57 | 55 | 58 | 14, 51 | 52 | 53 | 59 | 60 | 61 | 62 | 63 | 110 | 64 | 65 | 66 | 68 | 69 | 70 | 72-73 | 74 | 75 | 76 | 84 | 86 | 131 |

Furthermore, three of the exhibits attached to each complaint are identical.  *Compare* 1st Am. Compl., Exs. 1-3; *with Brigida* Compl. Exs. 2, 8, 9, ECF Nos. 72-2, 72-8, 72-9 (Nov. 12, 2018).

10

adduced would likely be identical." *Brocq*, 2017 WL 1281129, at *3. While plaintiffs' counsel

in *Brigida* argues that "the theories behind the claims for relief requested in each [lawsuit] are

different," divergent legal theories do not negate the substantial overlap. *See, e.g.*, *Victaulic Co.

v. Romar Supply, Inc.*, No. 3:13–CV–02760–K, 2013 WL 6027745, at *2 (N.D. Tex. Nov. 14,

2013) ("While the Georgia Case involves allegations of direct infringement and this case alleges

induced infringement, at their core, both cases must decide if the Victaulic Patents were

infringed by the SlideLok pipe coupling.").

In sum, this action should be transferred to the District of Columbia "to avoid the waste

of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid

piecemeal resolution of issues that call for a uniform result." *Cadle Co.*, 174 F.3d at 603

(quotation marks and citation omitted).

### B.    Alternatively, This Case Should Be Transferred Under 28 U.S.C. 1404(a)

"For the convenience of parties and witnesses, in the interest of justice, a district court

may transfer any civil action to any other district or division where it might have been

brought[.]" 28 U.S.C. § 1404(a). While a court in this district has concluded that § 1404(a) is

irrelevant for consideration of transfer under the first-to-file rule, *see Strukmyer v. Infinite Fin.

Solutions*, Inc., No. 3:13–cv–3798–L, 2013 WL 6388563, at *7 (N.D. Tex. Dec. 5, 2013),

Defendants address § 1404(a) because it provides an independent basis for transfer.

District courts have "broad discretion" in deciding whether to transfer cases under §

1404(a). *In re Volkswagen Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc). "The movant

has the burden to show good cause for the transfer." *Blackberry Limited v. Avaya, Inc.*, No.

3:16-cv-2185-M, 2017 WL 4512835, at *2 (N.D. Tex. Oct. 10, 2017). "[F]or a transfer to be

granted, the transferee venue must be clearly more convenient than the venue chosen by the

plaintiff."  *Id.*  To make this assessment, the Fifth Circuit "requires courts to consider specific private and public interest factors before making the transfer decision."  *Id.* at *1.

In making a permissive transfer of venue determination, "the Court must consider a number of private and public interest factors":

> The private interest factors include (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. The public interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.

*Id.* at *1.  "[T]hese public and private interest factors are not necessarily exhaustive or exclusive, and no single factor is dispositive."  *Moss v. Lockheed Martin Corp.*, No. 3:10-cv-1659, 2011 WL 197624, at *2 (N.D. Tex. Jan. 18, 2011).

It cannot reasonably be disputed that the case properly might have been brought in the District of Columbia because that is the location where the records are kept and where the relevant decisions were made.  *See supra* Arg. § III; *see also* Order at 10-11, *Brigida v. U.S. Dep't of Transp.* (D. Ariz. Nov. 7, 2016) (transferring the related action to the District of Columbia after concluding that it "could have been filed in that district").  Accordingly, § 1404(a)'s threshold requirement is met.  Moreover, the relevant factors counsel decisively in favor of transfer to the District of Columbia.

Section 1404(a) is focused on "the convenience of parties and witnesses."  28 U.S.C. § 1404(a).  *See Raz Imports, Inc. v. Luminara Worldwide, LLC*, No. No. 3:15-CV-02223-M, 2015 WL 6692107, at *6 (N.D. Tex. Nov. 3, 2015) ("The convenience of witnesses is often regarded as the most important factor in deciding a motion to transfer venue.").  Here, the defendant

agencies are headquartered in the District of Columbia, which also serves as the principal duty station of the official capacity of the only proper Defendant, the Secretary of Transportation. *See* App. 003 ¶¶ 3-4. Most documents regarding the FAA's challenged decisions are located in Washington, D.C. *See* App. 005 ¶¶ 10-13. At least three former FAA officials expressly identified in the complaint no longer work for Defendants, but continue to be found in the Washington, D.C. area. *See* App. 004 ¶¶ 5-7; *see also* 1st Am. Compl. ¶¶ 59-62 (naming Joseph Teixeira); *id.* ¶¶ 73-74 (naming Carrolyn Bostick); *id.* ¶ 87 (naming Molly Harris). As to other FAA officials who might become witnesses in this suit, there is ample reason to expect that they would be located primarily in Washington, D.C. or perhaps in Oklahoma City, Oklahoma, but not in the Northern District of Texas. *See* App. 004-005 ¶¶ 9-13. Indeed, it would appear that only Plaintiff, and no one else, would be "convenienced" by maintaining this action in Texas.

Under these facts, the private interest factors uniformly support venue in District of Columbia. *See RLI Ins. Co. v. Allstate County Mut. Ins. Co.*, No. 3:07-cv-1256-M, 2008 WL 2201976, at *2 (N.D. Tex. May 28, 2008) (holding under the "relative ease of access to sources of proof" factor that the "original location of the documents" weighs in favor of transfer); *Bedrock Logistics, LLC v. Braintree Labs., Inc.*, No. 3:16-cv-2815-M, 2017 WL 1547013, at *3 (N.D. Tex. Apr. 28, 2017) (holding that "availability of compulsory process" factor "weighs strongly in favor of transfer" to the forum where key former employees could be subpoenaed and where plaintiff did not establish "that any key witnesses are located in Texas"); *RLI Ins. Co.*, 2008 WL 2201976, at *3 ("The Court must take into consideration the cost of attendance for all witnesses"). Moreover, the related litigation proceeding in the District of Columbia likewise favors transfer. *See Raz Imports*, 2015 WL 6692107, at *6-7 (concluding that the "practical considerations for expeditious adjudication" factor weighed in favor of transfer where another

13

court had already gained familiarity with a complex matter and transfer could avoid duplicative efforts).

Likewise, the public interest factors weigh in favor of transfer.  Most significantly, the interest in "having localized interests decided at home" supports transfer to the location where the challenged decisions were made.  *See Lightbeam Health Solutions, Inc., v. Tidewater Physicians Multispecialty Grp. PC*, No. 3:17-cv-0395-M, 2017 WL 3382458, at *3 (N.D. Tex. Aug. 7, 2017) (holding that this factor "generally favors the venue where the acts giving rise to the lawsuit occurred").  Moreover, unnecessary conflicts could arise in the absence of transfer due to the pending overlapping lawsuit.  *Raz Imports*, 2015 WL 6692107, at *8 (holding that the "avoidance of unnecessary problems regarding conflict of laws" factor weighed in favor of transfer where "there is a substantial risk of inconsistent holdings by the two courts" if both cases proceeded).  The remaining two factors are generally neutral, and neither of them weighs in favor of retaining jurisdiction in Texas.  "Both fora are equally capable of construing and applying federal law."  *Paragon Indus., L.P. v. Denver Glass Machinery, Inc.*, No. 3:07-CV-2183-M, 2008 WL 3890495, at *3 (N.D. Tex. 2008).  And it cannot be said that this district is less subject to administrative delay by congestion than the proposed venue.  *See, e.g.*, United States Courts, *Federal Judicial Caseload Statistics 2018*, Table C-1, https://www.uscourts.gov/federal-judicial-caseload-statistics-2018-tables (last visited Mar. 7, 2019) (showing that the Northern District of Texas had 13,683 civil cases pending, while the District of Columbia had 3,411 civil cases pending); *id.*, Table C-5 (showing that the median time to disposition for both districts was essentially the same, at 6.7 and 6.6 months, respectively).

Thus, while a plaintiff's choice of forum receives "substantial weight when determining whether a transfer of venue is appropriate," transfer is appropriate where "the balance of factors strongly favors the moving party." *Paragon Indus.*, 2008 WL 3890495, at *4. Here, numerous factors weigh strongly in favor of transfer, and the interest of justice supports transfer to the District of Columbia for the convenience of parties and witnesses.

## CONCLUSION

For the reasons set forth above, the Court should grant defendants' motion and dismiss this case or transfer venue to the U.S. District Court for the District of Columbia.

DATED: March 8, 2019                  JOSEPH H. HUNT
                                       Assistant Attorney General

                                       ERIN NEALY COX
                                       United States Attorney

                                       JOSHUA E. GARDNER
                                       Assistant Branch Director
                                       Civil Division, Federal Programs Branch

                                       */s/  Galen N. Thorp*
                                       GALEN N. THORP (V.A. Bar No. 75517)
                                       Senior Counsel
                                       MICHAEL DREZNER (V.A. Bar No. 83836)
                                       Trial Attorney
                                       U.S. Department of Justice
                                       Civil Division, Federal Programs Branch
                                       1100 L Street NW
                                       Washington, DC 20530
                                       Telephone: (202) 514-4505
                                       Facsimile: (202) 616-8470
                                       Email: michael.l.drezner@usdoj.gov

                                       *Counsel for Defendants*

15

<u>CERTIFICATE OF SERVICE</u>

     On March 8, 2019, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Galen N. Thorp ___
GALEN N. THORP
