# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LUCAS K. JOHNSON, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | )     Civil Action No. 1:19-cv-1916 (RDM) <br> ) |
| U.S. DEPARTMENT OF <br> TRANSPORTATION, et al., | ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

## DEFENDANTS' MOTION FOR RELATED CASE DESIGNATION

Pursuant to the Court's direction at the October 8, 2019 Status Conference, the United States Department of Transportation ("DOT"), the Federal Aviation Administration ("FAA"), and the heads of those agencies (collectively, "Defendants") respectfully request under Local Rule 40.5(b)(3) that the Court determine that the above-captioned case is related to *Brigida v. Chao*, No. 1:16-cv-2227 (DLF).[1]  Both cases grow out of the same event and involve common issues of fact, and thus it would serve judicial economy for one judge to manage both cases.

## BACKGROUND

Both *Johnson* and *Brigida* are putative class actions alleging that the FAA violated Title VII of the Civil Rights Act by intentionally discriminating on the basis of race in revising its process for hiring air traffic control specialists in advance of vacancy announcement FAA-AMC-

---

[1] Because this Court directed the parties to file a motion in this case, Defendants have docketed this filing as a motion only in this case.  *Cf.* LCvR 40.5(c)(2)-(3) (providing that relatedness "shall be determined by the judge to whom the [later-numbered] case is assigned").  Defendants would be happy to also provide written notice on the *Brigida* docket, but will await direction from the Court before doing so.  *See id.* 40.5(b)(3) (calling for a party to "notify, in writing, the judges on whose calendars the cases appear and [] serve such notice on counsel for all other parties").

14-ALLSRCE-33537 ("2014 Announcement").  *See* 3d Am. Compl. ("*Brigida* Compl.") ¶¶ 117-23, *Brigida v. Chao*, No. 16-2227 (Oct. 23, 2018), ECF No. 68;[2] 1st Am. Compl. ("*Johnson* Compl.") ¶¶ 151-58, *Johnson v. U.S. Dep't of Transp.*, No. 19-1916 (Dec. 5, 2018), ECF No. 10.[3]  *Johnson* alternatively alleges that the same facts constitute disparate impact discrimination.  *See Johnson* Compl. ¶¶ 159-65.[4]

Historically, the FAA has hired candidates to become air traffic control specialists ("ATCS" or "controllers") from various sources, including among others: (1) veterans with air traffic control experience attained during military service, (2) graduates of programs accredited under the FAA's Collegiate Training Initiative ("CTI") program, and (3) members of the general public who may have no prior training or experience in air traffic control.  *See Johnson* Compl. ¶ 14; *Brigida* Compl. ¶¶ 32-33, 35.  In 2013, the FAA decided to modify its hiring process for new controllers (which encompasses recruitment, assessment, and selection) based on several reviews and analyses, including a barrier analysis conducted pursuant to Equal Employment Opportunity Commission (EEOC) Management Directive 715.  *See Johnson* Compl. ¶ 61; *Brigida* Compl. ¶ 49.

---

[2] The *Brigida* class action was originally filed in the U.S. District Court for the District of Arizona but was transferred to the U.S. District Court for the District of Columbia on venue grounds.  *See* Original Compl., *Brigida v. U.S. Dep't of Transp.*, No. 2:15-cv-2654 (D. Ariz. Dec. 30, 2015), ECF No. 1; Order, *Brigida v. U.S. Dep't of Transp.* (D. Ariz. Nov. 7, 2016), ECF No. 33.  There are currently four named plaintiffs: Andrew Brigida, Pollyanna Wang, Suzanne Rebich, and Matthew Douglas-Cook.  *Brigida* Compl. ¶¶ 3-6.

[3] The *Johnson* class action was originally filed in the U.S. District Court for the Northern District of Texas but was transferred to the U.S. District Court for the District of Columbia on venue grounds.  *See* Original Compl., *Johnson v. U.S. Dep't of Transp.*, No. 3:18-cv-02431-M (N.D. Tex. Sept. 12, 2018), ECF No. 2; Order, *Johnson v. U.S. Dep't of Transp.*, No. 3:18-cv-02431-M (N.D. Tex. June 26, 2019), ECF No. 28.  The only named plaintiff is Lucas Johnson.  *Johnson* Compl. ¶ 1.

[4] While the *Brigida* class action also formally asserts that the same allegations make out an Equal Protection claim under the Fifth Amendment, *Brigida* Compl. ¶¶ 124-27, that count was dismissed for failure to state a claim, and plaintiffs have retained it merely to preserve the claim for appeal.  *See* Mem. Opinion & Order at 10 n.5, *Brigida v. U.S. Dep't of Transp.*, ECF No. 50 (May 31, 2018); Order at 4-6, *Brigida v. U.S. Dep't of Transp.*, ECF No. 33 (Nov. 7, 2016).

In a December 30, 2013 e-mail to CTI schools, the FAA provided "an overview of the immediate changes being made to the ATC hiring process" in order to "improve and streamline the selection of ATC candidates." *Johnson* Compl., Ex. 1, ECF No. 10 (also attached as *Brigida* Compl. Ex. 2, ECF No. 72-2). The e-mail advised that, rather than using separate hiring processes predicated on distinguishing among categories of sources, "a single vacancy announcement will be used for all applicant sources" in February 2014 and "[a]ll applicants will be evaluated against the same set of qualification standards." *Id.* As a result, "[e]xisting inventories of past applicants will not be used." *Id.*

Other changes included an updated testing process, discontinuation of "[c]entralized selection panels," and candidate interviews. *Id.* Previously, most applicants were required to pass the FAA's Air Traffic Selection and Training ("AT-SAT") test to be eligible for hiring as a trainee controller. *See Johnson* Compl. ¶ 13; *Brigida* Compl. ¶¶ 25, 28. Under the 2014 Announcement, all applicants would be required first to pass a new online screening tool called the biographical assessment (sometimes referred to as the "biographical questionnaire") to be further considered for selection. *Johnson* Compl., Ex. 1. The AT-SAT would then be administered to those who passed the biographical assessment. *Id.* In place of selection panels and interviews, the FAA would generate "a single nationwide referral list . . . containing all candidates who meet the qualification standards and pass the assessments," from which selections would be "fully automated, grouping candidates by assessment scores and veteran's preference." *Id.*

Both the sole *Johnson* plaintiff and the four *Brigida* plaintiffs applied to the 2014 Announcement. *Johnson* Compl. ¶¶ 140-41; *Brigida* Compl. ¶¶ 82, 93, 99, 105. All five named plaintiffs allege that as graduates of CTI programs, they would have had a leg up if the FAA had

3

continued its pre-2014 application process.  *See Johnson* Compl. ¶¶ 14, 138; *Brigida* Compl. ¶¶ 77-79, 90-92, 96-98, 102-03.  All five named plaintiffs took the biographical assessment in February 2014, and none of them received a passing score.  *See Johnson* Compl. ¶¶ 141-142; *Brigida* Compl. ¶¶ 82, 84, 93-94, 99-100, 105-06.  Accordingly, none of them were eligible for further consideration in the 2014 application process.  *See Johnson* Compl. ¶ 97; *Brigida* Compl. ¶ 84.

The two lawsuits apply the same legal theory—intentional discrimination on the basis of race—to two different aspects of FAA's changes to the controller hiring process.  The *Brigida* class action alleges that *discontinuing* separate announcements for graduates of CTI programs was intentional discrimination against all eligible CTI graduates on the basis of race, *Brigida* Compl. ¶¶ 118-23, whereas the *Johnson* class action alleges that *implementing* the new biographical assessment was intentional discrimination on the basis of race against all applicants who did not pass the assessment, *Johnson* Compl. ¶¶ 151-58.  Both challenged actions were part of the same set of decisions preceding the 2014 Announcement, and both were described in the same December 30, 2013 e-mail—upon which both sets of plaintiffs rely—as part of the "immediate changes being made to the ATC hiring process."  *Johnson* Compl., Ex. 1; *Brigida* Compl., Ex. 2.

The complaints also seek overlapping relief.  The *Brigida* complaint—on behalf of a putative class of approximately 2,000-3,500 CTI graduates who would have been eligible to apply for a CTI-specific vacancy announcement if the FAA had repeated the process used before 2014, *see Brigida* Compl. ¶¶ 67, 109-10—seeks (1) a declaration that the FAA acted unlawfully, (2) an injunction directing the FAA to give hiring preference to named plaintiffs and the putative class, (3) damages, and (4) front pay/backpay.  *See id.* ¶¶ 122-23, prayer for relief.  The *Johnson*

complaint—on behalf of a putative class of more than 20,000 applicants to the 2014 Announcement who did not pass the biographical assessment, *Johnson* Compl. ¶¶ 125, 130—likewise seeks (1) a declaration that the FAA acted unlawfully, (2) "reinstatement of the opportunity to be hired," (3) damages, (4) front pay/backpay, and (5) unspecified changes to the hiring process to "institute accurate and validated standards" and "eradicate the effects" of the allegedly unlawful practices. *See id.* prayer for relief ¶¶ A-M.

## STANDARD OF REVIEW

Under the Local Rules "the fundamental interests served by the random assignment rule [for new cases]" is outweighed by the "interest of judicial economy" for related cases. *Singh v. McConville*, 187 F. Supp. 3d 152, 155 (D.D.C. 2016) (quotation marks omitted).[5]  Civil cases in this district are "deemed related" where they are both still pending on the merits and meet one of various factors, including that they "(ii) involve common issues of fact, or (iii) grow out of the same event or transaction." LCvR 40.5(a)(3).  If plaintiffs fail to submit a notice of related case when the newest case is filed, any party who becomes aware that the cases are related is obligated to provide notice to both courts. *See* LCvR 40.5(b)(3).  "The judge to whom a case is assigned resolves any objection to a related-case designation." *Comm. on the Judiciary v. McGahn*, 391 F. Supp. 3d 116, 119 (D.D.C. 2019) (quotation marks omitted) (citing LCvR 40.5(c)(3)).  Upon finding that cases are related, "the judge having the later-numbered case may transfer the case to the Calendar and Case Management Committee for reassignment to the judge having the earlier case." LCvR 40.5(c)(2).  "The party requesting the related-case designation bears the burden of showing that the cases are related under Local Civil Rule 40.5." *Id.*  The

---

[5] Hereinafter, internal citations, quotation marks and alterations are omitted unless otherwise noted.

"related-case inquiry is separate and distinct from an inquiry regarding case consolidation." *Singh*, 187 F. Supp. 3d at 155.

## ARGUMENT

Because both *Brigida* and *Johnson* concern the FAA's decision to revise its hiring process for controllers in advance of the 2014 Announcement, they plainly "grow out of the same event." Moreover, they also involve substantial common issues of fact regarding that event. Not only are the same facts regarding the policy changes at issue, but both cases also allege the same kind of intentional discrimination and rely on overlapping evidence. Indeed, the plaintiff in *Johnson* is a member of the *Brigida* putative class, and the four plaintiffs in *Brigida* are conversely members of the *Johnson* putative class.

### I.     Both *Brigida* and *Johnson* Grow Out of the Same Event

The Local Rules require designation as a related case where two cases pending on the merits "grow out of the same event or transaction." LCvR 40.5(a)(3). It is in "the interest of judicial economy" for such cases to be handled by the same judge. *Singh*, 187 F. Supp. 3d at 155; *cf. United States v. Second Chance Body Armor, Inc.*, 771 F. Supp. 2d 42, 47 (D.D.C. 2011) (holding, in discussion of transfer under 28 U.S.C. § 1404(a) that "to conserve judicial resources, litigation of related claims in the same forum is strongly favored"). Because both *Johnson* and *Brigida* grow out of the FAA's decision to modify its hiring process for new air traffic controllers in advance of the 2014 Announcement, the cases plainly meet this standard.

Plaintiffs cannot reasonably dispute that both (1) the decision to discontinue use of "[e]xisting inventories of past applicants," *Brigida* Compl. ¶ 50 & Ex. 2, and (2) the decision to require all candidates to apply in February 2014 and to pass a new biographical assessment before further consideration in the selection process, *Johnson* Compl. ¶ 63 & Ex. 1, were part of the same decisionmaking process in 2013. *See, e.g.*, Brigida Compl. ¶¶ 110, 116 (characterizing

6

the complaint as turning upon the FAA's "*single decision* to purge the Qualified Applicant Register *and* adopt a new hiring practice for Air Traffic Controllers" (emphasis added)).  Indeed, both complaints rely on the same December 30, 2013 e-mail which informed CTI schools that both were "immediate changes being made to the ATC hiring process" as a result of an effort to "improve and streamline the selection of ATC candidates."  *Johnson* Compl., Ex. 1; *Brigida* Compl., Ex. 2.  Accordingly, it is unavoidable that both lawsuits grow out of the "same event."  Even if the committee that adopted the changes made these decisions on different days—which plaintiffs have not alleged—it is plain that they were adopted as part of a unitary set of changes to the FAA controller hiring process and were implemented at the same time.  Moreover, it is logical to treat discontinuation of an old system as part of the same event as implementation of a new system, because, even if those actions are separated in time—unlike what occurred here— they would generally be expected to be related and grow out of each other.

      Courts have had limited need to explore the contours of this prong of LCvR 40.5 in published decisions.  However, courts have relied on this prong to find that discrimination claims are related where they are rooted in the same event, even if the allegations in the complaints are spread out over a period of time.  *See, e.g.*, *Sataki v. Broadcasting Bd. of Governors*, 733 F. Supp. 2d 16, 19 (D.D.C. 2010) (concluding that two cases brought by the same plaintiff "arise out of the same event, namely, Mr. Falahati's alleged harassment of Plaintiff and the Defendants' response thereto"); *cf. Keepseagle v. Glickman*, 194 F.R.D. 1, 3 (D.D.C. 2000) (holding that cases were not related "[b]ecause none of these acts [of county commissions in entirely different regions of the country] would be at issue in both cases, [thus providing] . . . no common events or transactions out of which the cases could grow").  In addition, courts have concluded that this prong plainly encompasses lawsuits resulting from promulgation of the same regulation.  *See*

7

*Autumn Journey Hospice, Inc. v. Sebelius*, 753 F. Supp. 2d 135, 139-40 (D.D.C. 2010) (concluding that two cases arose "out of a common event or transaction—namely, the promulgation of the . . . regulation and the calculation of the plaintiff hospices' cap repayment obligations pursuant to that regulation—such that judicial economy would be served by having these matters resolved by the same judge"); *Collins v. Pension Benefit Guarantee Corp.*, 126 F.R.D. 3, 7 (D.D.C. 1989) ("If the court agrees with plaintiffs that ERISA impliedly amended the plans, and therefore that the benefits were nonforfeitable under the terms of a plan, PBGC intends to apply its phase-in rule, the same rule challenged in *Rettig/Peich*. This is sufficient to conclude that the two cases grow out of the same event or transaction.").  The FAA's changes to its controller hiring process in advance of the 2014 Announcement similarly constitute one "event" out of which these lawsuits grew.

      Further support for this interpretation of "grow[ing] out of the same event or transaction," LCvR 40.5(a)(3), is found in caselaw regarding other legal standards that employ similar language to ensure judicial economy, such as res judicata.  For example, the doctrine of res judicata is driven, in part, by the expectation that a plaintiff must "present in one suit all the claims for relief that he may have *arising out of the same transaction or occurrence*." *Banks v. Inspired Teaching School*, 243 F. Supp. 3d 1, 4 (D.D.C. 2017) (emphasis added).  Courts determine whether the cases "involv[e] the same claims or cause of action" by examining "whether [the cases] share the same nucleus of facts." *Id.*  "[T]he facts surrounding the transaction or occurrence . . . operate to constitute the cause of action, not the legal theory upon which a litigant relies." *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984).  Thus, plaintiffs were barred from later asserting different legal theories regarding the same application previously litigated, *Cottrell v. Vilsack*, 915 F. Supp. 2d 81, 89-90 (D.D.C. 2013), regarding

circumstances arising from a termination, *Ivey v. Paulson*, 574 F. Supp. 2d 141, 142-43 (D.D.C. 2008), and regarding the series of events between a request for a loan modification and the commencement of foreclosure proceedings, *Peek v. SunTrust Bank, Inc.*, 313 F. Supp. 3d 201, 205 (D.D.C. 2018).  It would be incoherent for the related case standard to be applied more narrowly than the standard for res judicata.[6]  Here, the complaints plainly share the same nucleus of facts necessary to satisfy the res judicata standard—as reflected in the *Brigida* plaintiffs' acknowledgement that "purg[ing] the Qualified Applicant Register" and "adopt[ing] a new hiring practice for Air Traffic Controllers" were part of a "single decision" by the FAA.  *Brigida* Compl. ¶¶ 110, 116.

## II. Both Brigida and Johnson Involve Common Issues of Fact

Both cases allege intentional discrimination in violation of Title VII based on aspects of the same set of policy changes.  Therefore, in addition to growing out of the same event, the cases also involve numerous "common issues of fact."  LCvR 40.5(a)(3).  To satisfy this prong, "the underlying facts themselves must be common" rather than merely "require analyzing the same kinds of facts."  *Dakota Rural Action v. U.S. Dep't of Agriculture*, No. 18-2852, 2019 WL 1440134, at *2 (D.D.C. Apr. 1, 2019).

Plaintiffs cannot reasonably dispute the substantial factual overlap between the claims in *Brigida* and *Johnson*.  Plaintiffs' counsel in *Brigida*—including Mr. Pearson, who is plaintiff's counsel in *Johnson*—have already acknowledged that the complaints "identify common facts

---

[6] Similarly, under Rule 20(a), joinder is permitted for claims "*arising out of the same transaction or occurrence*, or series of transactions or occurrences," when certain other conditions are met.  Fed. R. Civ. P. 20(a) (emphasis added).  This requires that "the claims must be logically related," which is a "flexible" test.  *Disparte v. Corp. Exec. Bd.*, 223 F.R.D. 7, 10 (D.D.C. 2004).  A court in this district held this "same transaction or occurrence" standard was met where the claims and counterclaims "arise out of the soured business and personal relationships of [two business associates]" including whether their operating agreement should be enforced or rescinded.  *Headfirst Baseball LLC v. Elwood*, No. 13-536, 2014 WL 12784203, at *4 (D.D.C. Mar. 27, 2014).  Thus, courts view "arising out of the same transaction" to include the entire circumstance and do not permit it to be dissected into separate parts.

9

shared between the cases." Pls.' Mot. Class Certification at 26, ECF No. 73-1, *Brigida v. Chao* (D.D.C. Nov. 12, 2018). Further, at least 27 factual paragraphs of the complaints are identical or nearly identical.[7] The lawsuits' intentional discrimination theories most obviously depend on a common set of factual allegations. For example, both complaints allege that the hiring process used for the 2014 Announcement improperly had the "purpose of increasing the racial diversity of Air Traffic Controller applicants." *Brigida* Compl. ¶ 118; *cf. Johnson* Compl. ¶ 86. Both complaints make allegations regarding the barrier analysis conducted on the FAA's behalf. *See* Brigida Compl. ¶ 60; Johnson Compl. ¶ 70-71. Both complaints allege improper favoritism and assistance to members of the National Black Coalition of Federal Aviation Employees. *See Brigida* Compl. ¶¶ 57-64; *Johnson* Compl. ¶¶ 15-16, 68-69, 72-82, 153(b)-(c). Accordingly, there will be inevitable overlap for discovery and for determinations of whether the parties can carry their burdens under the *McDonnell Douglas* burden-shifting analysis.

In addition, the facts regarding all of the named plaintiffs and many of the absent class members are relevant to both cases due to the overlapping class definitions. For example, Mr. Johnson is a member of the *Brigida* putative class because he was a CTI graduate. *See Johnson* Compl. ¶ 138. And each of the four named plaintiffs in *Brigida* are also members of the *Johnson* putative class because they applied in 2014 but did not pass the biographical assessment. *See Brigida* Compl. ¶¶ 82-84, 93-94, 99-100, 105-06. In the October 8, 2019 telephonic status conference in *Johnson*, plaintiffs' counsel Michael Pearson estimated that about 1,000 people

---

[7] The following paragraphs are essentially the same:

| *Brigida* | 26 | 27 | 28 | 30 | 32 | 38 | 39 | 42 | 48 | 49 | 50 | 51 | 52 | 54 | 55 | 56 | 57 | 58 | 59 | 60 | 61 | 62 | 63 | 64 | 65 | 66 | 113 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| *Johnson* | 56 | 57 | 55 | 58 | 14, 51 | 52 | 53 | 59 | 60 | 61 | 62 | 63 | 110 | 64 | 65 | 66 | 68 | 77 | 69 | 70 | 72-73 | 74 | 75 | 76 | 84 | 86 | 131 |

Furthermore, three of the exhibits attached to each complaint are identical. *Compare Johnson* Compl., Exs. 1-3; *with Brigida* Compl. Exs. 2, 8, 9, ECF Nos. 72-2, 72-8, 72-9 (Nov. 12, 2018).

10

may be members of both putative classes. Thus, the circumstances of all of these overlapping individuals may be relevant for determination of any number of matters in both class actions, including injury, mitigation, damages, and injunctive relief.

These factual overlaps amply support application of the related case designation and assignment to the same judge. *See, e.g., Singh v. McConville*, 187 F. Supp. 3d 152, 156 (D.D.C. 2016) (concluding two cases were related, in part because "the Court will be required to make similar factual determinations in both cases"); *Autumn Journey Hospice, Inc. v. Sebelius*, 753 F. Supp. 2d 135, 140 (D.D.C. 2010) ("[T]here is substantial overlap in both the factual underpinning and the legal matters in dispute in each of these hospice cap cases."); *Assiniboine & Sioux Tribe of Fort Peck Indian Reservation v. Norton*, 211 F. Supp. 2d 157, 159 (D.D.C. 2002) (finding relation appropriate where there were "many" overlapping "factual issues that this Court must resolve" in both cases). And "although differences may exist between the [cases]," there are "clearly issues of fact that are common to both cases that are sufficient" to apply LCvR 40.5. *Assiniboine*, 211 F. Supp. 2d at 160. Indeed, "treating these cases as related achieves great economies and preserves scarce judicial resources." *Medford v. Dist. of Columbia*, 691 F. Supp. 1473, 1476 (D.D.C. 1988).

## CONCLUSION

For the reasons set forth above, the Court should designate *Johnson* as related to *Brigida* and transfer the case to the Calendar and Case Management Committee for reassignment to the judge having the earlier case, pursuant to LCvR 40.5(c)(2).

DATED: October 17, 2019						Respectfully submitted,

											JOSEPH H. HUNT
											Assistant Attorney General

											CARLOTTA P. WELLS
											Assistant Branch Director
											Civil Division, Federal Programs Branch

											*/s/ Galen N. Thorp*
											GALEN N. THORP (V.A. Bar No. 75517)
											Senior Counsel
											MICHAEL DREZNER (V.A. Bar No. 83836)
											Trial Attorney
											U.S. Department of Justice
											Civil Division, Federal Programs Branch
											1100 L Street NW
											Washington, DC 20530
											Telephone: (202) 514-4505
											Facsimile: (202) 616-8470
											Email: michael.l.drezner@usdoj.gov

											*Counsel for Defendants*