**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Lucas K. Johnson, on behalf of himself and the Class he seeks to represent,<br><br>Plaintiff,<br><br>vs.<br><br>United States Department of Transportation, et. al.<br><br>Defendants. | Case No 1:19-cv-1916 (RDM)<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR RELATED CASE DESIGNATION**<br><br>(Assigned to the Honorable Randolph D. Moss) |

Plaintiff, Lucas K. Johnson, through undersigned counsel, hereby files his Response to Defendants' Motion for Related Case Designation. Defendants assert that this case ("*Johnson*") and *Brigida v. Chao*, No. 1:16-cv-2227 (DLF) ("*Brigida*"), "grow out of the same event" and "involve common issues of fact" such that this Court should designate them related.[1] Plaintiff objects as this lawsuit is not related to *Brigida* as contemplated by Local Rule 40.5 and judicial economy will not be meaningfully served by relating the case and reassigning it to the same Judge.

## **BACKGROUND**

Both *Johnson* and *Brigida* are putative class actions alleging that the Federal Aviation Administration ("FAA") violated Title VII of the Civil Rights Act ("Title VII") by discriminating on the basis of race. Specifically, *Johnson* involves the FAA's decision to engage in racial balancing and the subsequent use an unvalidated Biographical Assessment/Biographical Questionnaire ("BA") to screen and eliminate qualified air traffic controller applicants based upon race. Conversely, *Brigida* involves the FAA engaging in racial balancing by engaging in numerous acts of discrimination against an inventory of air traffic control candidates maintained by the FAA that was developed in partnership with universities and colleges participating in the FAA's Air Traffic Collegiate Training Initiative ("CTI") program (the "CTI Inventory").

---

[1] The citations herein reference the current versions of the *Brigida* and *Johnson* Complaints. The *Brigida* court is currently considering a motion to amend the Complaint and the *Johnson* Second Amended Complaint was filed concurrently with this Response.

Historically, the FAA has hired candidates to become air traffic control specialists ("ATCS" or "controllers") from several sources, including: veterans with air traffic control experience from military service – veteran's recruitment appointment ("VRAs"); graduates of the FAA accredited CTI programs; and members of the general public who may have no prior training or experience in air traffic control. Graduates from CTI programs were required to pass a validated air traffic aptitude test, known as the Air Traffic Control Selection and Training examination ("AT-SAT"), in order to be eligible for employment as a trainee controller. Prior to December of 2013, the FAA gave candidates on the CTI Inventory and VRAs preferential employment consideration for air traffic controller positions.

On or around December 30, 2013, the FAA Vice President for Safety and Technical Training sent an email to CTI-affiliated institutions stating, *inter alia*, that the FAA would no longer be hiring air traffic control candidates from the CTI Inventory. The FAA committed the action which brings rise to the *Brigida* complaint by purging the CTI Inventory, eliminating CTI employment preference, and engaging in other acts of discrimination directed at CTI graduates, resulting in Plaintiffs, and approximately 2,700 putative class members, losing their employment preference and opportunity. The sine qua non of the *Brigida* case involves the intentional discrimination against CTI program graduates who possessed an employment preference due to the FAA's unlawful desire to manipulate racial demographics.

In January 10, 2014, and subsequent to the CTI Inventory purge and loss of employment preference for the CTI graduates, the FAA implemented a new hiring process where applicants were required to take a computerized Biographical Assessment/Biographical Questionnaire ("BA"). On February 10, 2014, the FAA opened a vacancy announcement to solicit ATC applicants to apply via the new process. 28,511 prospective applicants, from all walks of life and experience levels, applied under the new process and took the BA. According to testimony by the President of the National Air Traffic Controllers Association, the BA was never validated. This use of the BA is the basis of the *Johnson* Complaint in which the Plaintiff and putative class members, over 90% of which are not affiliated with the CTI program and were not on the CTI Inventory, claim that the BA was intentionally

2

used as a screening tool by the FAA to either improperly favor or disadvantage applicants based upon race.

I.   **ARGUMENT**

   A.   **The Related Case Rule**

The general rule in this Court is that "all new cases filed in this courthouse are randomly assigned … in order to 'ensure greater public confidence in the integrity of the judicial process,' 'guarantee [ ] fair and equal distribution of cases to all judges,' 'avoid public perception or appearance of favoritism in assignments, and reduce [ ] opportunities for judge-shopping.'" *Singh v. McConville*, 187 F.Supp 3d 152, 154-55 (D.D.C. 2016) (quoting *Tripp v. Exec. Office of the President*, 196 F.R.D. 201, 202 (D.D.C. 2000)).

Local Rule 40.5 creates an exception for "related cases" in the interest of judicial economy. *Singh*, 187 F.Supp 3d at 155. Under Local Rule 40.5(a)(3), civil cases are deemed related when the earlier case is still pending on the merits in the District Court and the cases (i) relate to common property, or (ii) involve common issues of fact, or (iii) grow out of the same event or transaction, or (iv) involve the validity or infringement of the same patent. LCvR 40.5(a)(3)(i-iv). The party that seeks an exception to the related case rule bears the burden of showing that the cases are related under a provision of Local Rule 40.5(a)(3). *Dale v. Exec. Office of President*, 121 F.Supp 2d 35, 37 (D.D.C. 2000).

Defendants do not assert that *Brigida* and *Johnson* relate to common property, nor that the cases involve the validity or infringement of the same patent, sections (i) and (iv) under LCvR 40.5(a)(3). Instead, Defendants allege that *Brigida* and *Johnson* satisfy sections (ii) and (iii) of LCvR 40.5(a)(3) – alleging that the cases involve common issues of fact and that the cases grow out of the same event or transaction. Defendants' argument fails.

"The Rule offers no guidance about how much factual overlap is needed, or what constitutes an event." *Trump v. Committee on Ways and Means*, U.S. House of Representatives, 391 F. Supp. 3d 93, 96 (D.D.C. 2019). However, case law has established certain boundaries. For instance, "overlapping parties is not among the bases for a related-case designation" nor are cases related where

3

the same counsel is retained. *Id.* at 97. Undoubtedly, a number of CTI graduates purged from the CTI Inventory in December of 2013 took the February 2014 BA. However, on information and belief, the number of purged CTI candidates taking the February 2014 BA is only 4 to 5 percent (or 1,100 to 1,400) of the total candidates that took the exam (28,511). The FAA has never provided the actual number of purged CTI candidates taking the BA. Further, a mere overlap in discovery between cases is not grounds for applying the related case rule. *Tripp v. Exec. Office of President*, 196 F.R.D. 201, 202-203 (D.D.C. 2000). If the cases place "different sets and types of evidence at issue," they are likely not to be deemed related. *Committee on Judiciary v. McGahn*, 391 F. Supp. 3d 116, 119 (D.D.C 2019). Finally, if the cases focus on "different...actions done at different times," deeming the cases related will not create "a significant savings of judicial resources," and as such, should not be deemed related. *Trump*, 391 F. Supp. 3d at 97. The *Brigida* case involves the purging of the CTI Inventory and various other discriminatory acts resulting in elimination of the hiring preference given to CTI graduates. The putative class is composed of CTI program graduates. The *Johnson* case involves the use of the unvalidated BA improperly used to screen air traffic controller applicants from all walks of life and backgrounds based on race.

    **B.**    **Defendants Have Not Sufficiently Shown That *Brigida* and *Johnson* Grow From The Same Event Or Transactions So As To Override The Strong Presumption Of Random Case Assignment**

The local rules provide that civil cases will be considered related when two cases pending on the merits "grow out of the same event or transaction." LCvR 40.5(a)(3)(iii). However, "the Rule offers no guidance about...what constitutes an event." *Trump*, 391 F. Supp. 3d at 96. If the cases "involve different claims," they will not be considered related. *Id.* If the cases place "different sets and types of evidence at issue," they are likely not to be deemed related. *McGahn*, 391 F. Supp. 3d at 119. Finally, if the cases focus on "different...actions done at different times," deeming the cases related will not create "a significant savings of judicial resources," and as such, should not be deemed related. *Trump*, 391 F. Supp. 3d at 97. Because *Johnson* and *Brigida* involve different actions and claims, the

4

cases do not grow out of the same event or transaction and thus fail to meet the standard for related case designation.

Defendants have filed no declarations supporting their contention that the decision to discontinue separate announcements for graduates of the CTI programs, purge the CTI Inventory, and intentionally eliminate the CTI hiring preference, and the implementation and use of the BA were the result of the same transaction or event. Discovery would be necessary to determine whether or not the two distinct actions were – as Defendants contend – "adopted as part of a unitary set of changes." Defendants' Motion for Related Case Designation ("DMRCD") at 7. As such, Defendants claim that "it is unavoidable that both lawsuits grow out of the 'same event'" is mere conjecture and fails to override "the strong presumption of random case assignment." *Id.*; *McGahn*, 391 F. Supp. 3d at 121.

Furthermore, the *Brigida* case challenges the purge of the CTI Inventory and discriminatory acts targeting CTI graduates and requires that members of the class be CTI students, whereas the *Johnson* case challenges the BA and requires that members took the BA. Specifically, the *Johnson* case represents ATC applicants who met the minimum qualifications to be hired by the FAA, were required to take the BA – which was intentionally used as a screening tool by FAA personnel to either improperly favor or to disadvantage applicants based on their race – and, as such, were illegally denied a fair and equal opportunity to be considered for employment. *Johnson* Compl. ¶¶ 125-27. Alternately, the *Brigida* case represents qualified applicants who possessed a degree from a CTI institution, passed the AT-SAT, and were on, or should have been on, the FAA's CTI Inventory prior to the FAA's 2014 decision to eliminate the CTI Inventory and CTI employment preference. *Brigida* Compl. ¶ 109. As such, although all members of the *Brigida* class could hypothetically be represented in the *Johnson* class, over 90% of the *Johnson* class members could not be members of the *Brigida* class.[2]

Logic leads one to the conclusion that, if the two actions perpetrated by Defendants were actually the same event or transaction, all members of a class based on that action would be similarly injured and the parties would have the same claim. As stated above, that is not the case here. The cases

---

[2] 2,700/28,511= 9.5%. This percentage is overstated as it assumes that all those purged from the CTI Inventory in December of 2013 took the February 2014 BA; *See infra* fn. 2.

5

allege different claims. *Brigida* alleges a violation of Title VII by way of intentional discrimination based on race, while *Johnson* additionally alleges disparate impact. Per *Keepseagle v. Glickman*, because the purging of the CTI Inventory would not be at issue in both cases, it follows that there are "no common events or transactions out of which the cases could grow." 194 F.R.D. 1, 3 (D.D.C. 2000).

The *Brigida* and *Johnson* cases clearly grow out of different events and are thus unrelated. Defendant's Motion correctly notes that the two lawsuits apply "to two *different aspects* of the FAA's changes to the controller hiring process." *Id.* at 4 (emphasis added). The first being the decision to discontinue separate announcements for CTI graduates, eliminate CTI employment preference, purge the CTI Inventory, and engage in other discriminatory acts targeted at CTI graduates. The second being the implementation *and use of* the BA. This clearly shows that different events led to the claims brought in the respective cases. Defendants' argument that the cases are related because they "apply the same legal theory" is erroneous. DMRCD at 4. Reliance on the "same legal theory" does not weld two distinct incidents of discrimination into one.

In *McGahn*, the House Judiciary Committee filed a Notice of Related Case and cited as its reasoning the fact that the cases involved "the same Judiciary Committee investigation being conducted pursuant to the same legal authorities" for the purpose of obtaining the same evidence. 391 F. Supp. 3d at 119. The court noted that "at first blush" the cases seemed related due to the factual connections between them. *Id.* However, upon closer examination, the court considered that the cases "place[d] different sets and types of evidence at issue." *Id.* at 120. Namely, the court noted that one case alleged that McGahn should be compelled to comply with its subpoena for public testimony, while the other sought grand jury materials. *Id.* at 120-121. The court noted that the different claims "presented distinct issues of fact to be resolved." *Id.* (internal quotations omitted). Furthermore, even though the House Judiciary Committee filed both cases "to seek evidence for its ongoing investigation," the cases were not considered to grow out of the same event or transaction. *Id.* at 122. The court determined that the issuance of a subpoena and efforts to obtain grand jury materials were not the same event. *Id.* As such, the cases were not deemed related. *Id.*

6

This situation is like *McGahn* in that here, two classes seek relief due to what may, at first blush, seem to be the same event. However, like in *McGahn* where the court found two distinct actions, so too should this Court find that the purging of the CTI Inventory and other discriminatory acts targeted solely at CTI graduates is one event, which gives rise to the *Brigida* case, and the implementation and use of the BA is a second, separate event, which gives rise to the *Johnson* case. As such, this Court should find that the cases do not grow out of the same event or transaction.

Finally, the temporal relationship between the two events indicates that they are separate and distinct. Namely, the FAA eliminated the CTI Inventory and employment preference on or about December 30, 2013, whereas the BA was not implemented until February of 2014. *Brigida* Compl. ¶ 53; *Johnson* Compl. ¶ 91.

### C.  Defendants Have Not Sufficiently Shown That *Brigida* And *Johnson* Involve Common Issues Of Fact So As To Override The Strong Presumption Of Random Case Assignment

The Local Rules at 45(a)(3)(ii) provide that civil cases will be considered related when two cases pending on the merits "involve common issues of fact." To satisfy the related-case rule, "the underlying facts themselves must be common," not merely "common types of facts" – a standard these two cases do not meet. *Dakota Rural Action v. U.S. Dept. of Ag.*, WL 1440134 at *2 (D.D.C. 2019).

Treatment of *Brigida* as unrelated to *Johnson* is congruent with prior interpretations of Rule 40.5. In *Keepseagle*, an objection to relation was sustained when plaintiffs in the later-filed case claimed to "have been injured by the same policies and in the same manner as" the plaintiffs in the earlier-filed case because one set of plaintiffs claimed they were discriminated against for being Native American and the other set of plaintiffs claimed they were discriminated against for being African American. 194 F.R.D. 1 at 3. The court resolved that because the alleged discrimination affected two *separate* groups, the common fact that members of a protected class were discriminated against by the U.S. Department of Agriculture administering the same program was insufficient to satisfy the related case exception under Local Rule 45(a)(3)(ii). *Id*.

This case is like *Keepseagle*. Two *separate* groups of plaintiffs were injured by the same governmental agency implementing the same program, and the injuries were sustained through different mechanisms. In *Brigida*, students at CTI institutions were injured by the FAA when the FAA, seeking to improve diversity, eliminated the CTI Inventory, CTI employment preference, and engaged in other discriminatory acts specifically targeted at CTI graduates. Alternately, in *Johnson*, the injuries to the class were sustained when the FAA imposed a new unvalidated biographical assessment that unconstitutionally eliminated class members from employment consideration due to racial animus.

In *Dakota Rural Action*, plaintiffs alleged that defendants violated the National Environmental Policy Act ("NEPA") and the Administrative Procedure Act ("APA") when they categorically excluded FSA loans from requiring a prior environmental permit. WL 1440134 at *1. In conjunction with their complaint, plaintiffs filed a Notice of Related Case stating that *Dakota Rural Action* "involve[d] common issues of fact" with *Food & Water Watch*, a case where plaintiffs sued the USDA alleging that the USDA's grant of a construction permit to a poultry farm violated both NEPA and the APA. *Id*. The record in *Food & Water Watch* would present facts related to the environmental effects of a single operation in Maryland. *Id*. at *2. Conversely, the record in *Dakota Rural Action* would present facts relevant to the baseline environmental effect of similarly-sized operations. *Id*. The court opined that the plaintiffs may have shown that both cases would pose similar questions dependent on a similar *class* of facts, but that the plaintiffs failed to establish that the facts dictating the answers to those questions were common. *Id*. The court held that the underlying facts themselves must be common in order to satisfy the related-case rule. *Id*. As such, the court determined that the cases were unrelated. *Id.* at *3.

This case is like *Dakota Rural Action* and this Court should handle it as such. The *Brigida* and *Johnson* cases may raise similar questions dependent on a similar *class* of facts, but the facts providing the answers to the questions are not common across both cases. *Dakota Rural Action*, WL1440134 at *2. This is a strong indication that judicial economy will not be served and, as such, no exception should be made against the strong presumption of randomness. *Trump*, 391 F. Supp. 3d at 96.

Defendants' Motion correctly notes that both *Brigida* and *Johnson* allege different claims. DMRCD at 1-2. Both cases allege violation of Title VII of the Civil Rights Act and *Johnson* alleges disparate impact discrimination in the alternative. *Id.* at 2. Defendants fail to note that evidence concerning whether the *Johnson* BA has a disparate impact would not be determinative in the resolution of *Brigida* on the merits. If the cases place "different sets and types of evidence at issue," they are likely not to be deemed related. *McGahn*, 391 F. Supp. 3d at 119.

Title VII standards for intentional discrimination are different than Title VII standards for disparate impact. In order for the Brigida Plaintiff's to succeed on their claim of discriminatory practices against the FAA, they must prove that the FAA eliminated the CTI Inventory and employment preference in order to refuse to hire, and effectively discharge, members of the class based on race, color, or national origin. 42 U.S.C.A. § 2000e-2(a)(1). In contrast, in order for Johnson to succeed in his claim of disparate impact discrimination, he must first demonstrate that the FAA's policy of administering the BA as a predicate to hiring caused a disparate impact to the class on the basis of its race, color, or national origin. 42 U.S.C.A. § 2000e-2(k)(1)(A)(i). Second, the FAA must fail to demonstrate that administration of the BA is job-related for the ATC position and consistent with business necessity. 42 U.S.C.A. § 2000e-2(k)(1)(A)(i). Alternately, Johnson may demonstrate that an alternative employment practice would have accomplished the FAA's goal of improving diversity and that the FAA refused to adopt such practice. 42 U.S.C.A. § 2000e-2(k)(1)(A)(ii). Accordingly, *Johnson* requires analysis of different facts than those in *Brigida*. Ultimately, the fact that the cases make different claims is a strong indicator that they are not related. *Trump*, 391 F. Supp. 3d at 96. In essence, rather than "involve common issues of fact," the different claims in each case present different "issues of fact" to be resolved. *McGahn*, 391 F.Supp 3d at 121.

Defendants further assert that both cases allege the same kind of discrimination and rely on overlapping evidence. Defendants point to the fact that the Johnson is a member of the *Brigida* putative class and that the four *Brigida* Plaintiffs are members of the *Johnson* putative class. DMRCD at 1-2. It is accurate that plaintiffs who are members of both classes exist. However, the number of

overlapping class members is slight relative to the total number of class members in each case.[3] More importantly, under the local rules, overlapping parties is not a basis for related case designation. LCvR 40.5(a); *see also Trump*, 391 F.Supp 3d at 97. Moreover, the class in *Brigida* is distinct from the class in *Johnson*. Members of the *Brigida* class <u>must</u> be past CTI students. Members of the *Johnson* class <u>must</u> have taken the BA. *Brigida* class members have common injuries with one another and class members in *Johnson* have common injuries with one another but the injuries of the *Brigida* class members are separate and distinct from the injuries of the *Johnson* class members. Though some background facts may overlap – such as who influenced decision-making or what the motive for the decision was – the facts surrounding the injuries to each class are separate and distinct due to the separate and distinct nature of the injuries.

Finally, Defendants allege that *Brigida* and *Johnson* involve common issues of fact because their complaints share 27 paragraphs of similar material. In reviewing the 27 paragraphs of "common facts," in the versions of the Complaints relied upon by Defendants, the Court will find that 26 of them relate facts that are common background facts for both cases.[4] The 27th paragraph merely describes the adequacy of the purported class representative. *Brigida* Compl. ¶ 113; *Johnson* Compl. ¶ 131. The current *Brigida* Complaint is composed of 127 paragraphs and a 6-paragraph prayer for relief. *Brigida* Compl. The original *Johnson* Complaint is composed of 165 paragraphs and a 13-paragraph prayer for relief. As evidenced in *Dakota Rural Action*, the simple presence of common facts across cases is not sufficient to override the strong presumption to randomness unless the facts are determinative of the issues at bar. WL1440134 at *2.

---

[3] It is estimated that 1,100-1,400 of the approximate members of the *Brigida* class are also members of the 28,511 member *Johnson* class. Therefore, 4 to 5 percent of the *Brigida* class would also be members of the *Johnson* class. Conversely, and assuming these numbers are correct, 95 to 96 percent of the *Johnson* class would not be eligible to be members of the *Brigida* class.

[4]

| *Brigida* | 26 | 27 | 28 | 30 |    | 32 | 38 | 39 | 42 | 48 | 49 | 50 | 51 |     | 52 | 54 | 55 | 56 | 57 | 58 | 59 | 60 |       | 61 | 62 | 63 | 64 | 65 | 66 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| *Johnson* | 56 | 57 | 55 | 58 | 14,51 | 52 | 53 | 59 | 60 | 61 | 62 | 63 | 110 | 64 | 65 | 66 | 68 | 77 | 69 | 70 | 72,73 | 74 | 75 | 76 | 84 | 86 |

10

**II.    CONCLUSION**

For the reasons set forth above, the Court should not designate *Johnson* and *Brigida* as related.

**RESPECTFULLY SUBMITTED** this 25th day of November, 2019.

        **CURRY, PEARSON & WOOTEN, PLC**

*/s/ Michael W. Pearson*
Michael W. Pearson, DDC Bar No. 997169
814 W. Roosevelt St.
Phoenix, AZ 85007
Office: (602) 258-1000
Facsimile: (602) 523-9000
docket@azlaw.com
mpearson@azlaw.com
*Attorney for Plaintiff and Putative Class*