**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| LUCAS K. JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:19-cv-1916 (RDM) |
| ) | |
| U.S. DEPARTMENT OF ) | |
| TRANSPORTATION, et al., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION
FOR RELATED CASE DESIGNATION**

The above-captioned case is plainly related to *Brigida v. Chao*, No. 1:16-cv-2227 (DLF). The cases meet two different prongs of LCvR 40.5(a)(3)'s criteria for related cases. First, they both grow out of the Federal Aviation Administration's (FAA) decision to modify its hiring process for new Air Traffic Control Specialists in advance of the February 2014 vacancy announcement. Second, they involve common issues of fact on both liability and relief under Title VII claims, including multiple nearly identical paragraphs in their respective complaints, the same set of practice changes summarized in a single email, and what damages and/or injunctive relief (if any) more than 1,000 putative class members common to both cases may be entitled to. Thus, under Local Rule 40.5(a)(3) it is appropriate and more efficient for the cases to be managed by one judge. *See Tripp v. Executive Office of the President*, 196 F.R.D. 201, 202 (D.D.C. 2000) (holding that the related case rule "rests primarily on considerations of judicial economy" because it "often prove[s] wasteful of time and resources for two judges to be

handling cases that are so related that they involve common factual issues or grow out of the same event or transaction").

## ARGUMENT

### I.     Both *Brigida* and *Johnson* Grow Out of the Same Event

Defendants have shown that both *Brigida* and *Johnson* "grow out of the same event or transaction."  LCvR 40.5(a)(3); *see* Defs.' Mot. at 6-9, ECF No. 34.  Both cases rely on the same December 30, 2013 e-mail[1] which announced "immediate changes being made to the ATC hiring process" as a result of an effort to "improve and streamline the selection of ATC candidates." *See Johnson* 1st Am. Compl. Ex. 1; *Brigida* 3d Am. Compl. Ex. 2.[2]  This email specifically included both aspects of the changes to the hiring process that are now challenged in separate class actions—(1) the decision to issue an all-sources announcement in February 2014 and not use "[e]xisting inventories of past applicants," as challenged in *Brigida*, *see Johnson* 1st Am. Compl. Ex. 1, and (2) the decision to use a "biographical questionnaire" to screen applicants as part of the "revised testing process" for that February 2014 announcement, as challenged in *Johnson*.  *See id.*; *Johnson* 2d Am. Compl. ¶ 69; *Brigida* 3d Am. Compl. Ex. 2.[3]  Thus, even assuming *arguendo* that Plaintiff is correct that *Brigida* centers on an action that allegedly occurred on "December 30, 2013" and *Johnson* centers on an action that allegedly was not implemented until February 2014, *see* Pl.'s Response at 7, ECF No. 35, both of those actions

---

[1] *See* 1st Am. Compl. ¶¶ 60-63, ECF No. 10 ("*Johnson* 1st Am. Compl."); 2d Am. Compl. ¶¶ 67-69, ECF No. 36 ("*Johnson* 2d Am. Compl."); 3d Am. Compl. ¶¶ 48-51, ECF No. 68, *Brigida v. Chao*, No. 1:16-cv-2227 ("*Brigida* 3d Am. Compl."); Proposed 4th Am. Compl. ¶¶ 35-38, ECF No. 87-1, *Brigida v. Chao*, No. 1:16-cv-2227 ("*Brigida* Proposed 4th Am. Compl.").

[2] The December 30, 2013 email is also Exhibit 5 to the proposed Fourth Amended Complaint in *Brigida*.  *See* ECF No. 87-6, *Brigida v. Chao*, No. 1:16-cv-2227.

[3] Because the allegations and attachments to the complaints make clear that the challenged decisions were part of the same set of changes to the hiring process, Plaintiff is simply mistaken that agency declarations or discovery are necessary before a court can determine whether the cases are related. Pl.'s Response at 5.  The related case decision is intended to be made from the face of the complaints at the earliest opportunity.  *See* LCvR 40.5(b)-(c).

grow out of the decision to change the ATCS hiring process for 2014 and involved aspects of the same set of changes to the hiring process by the same decisionmakers.

Plaintiff claims that the "same event" prong should be limited to where the parties to both cases "would be similarly injured and . . . would have the same claim." Pl.'s Response at 5. This argument is contrary to the text and purpose of Local Rule 40.5, because these terms were adopted with the understanding that different claims and injuries can "grow out of the same event or transaction."[4]  *Cf. Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481 n. 22 (1982) ("Res judicata has . . . been taken to bar claims arising from the same transaction even if brought under different statutes."); *Green v. Howard Univ.*, 62 F.3d 424 (Table), 1995 WL 479018 (D.C. Cir. July 18, 1995) (unpublished) (rejecting effort to avoid res judicata on the ground that the claims "were too different" because it was "obvious that Green's reprisal and breach-of-contract claims arise from the same transaction").  Moreover, the case Plaintiff cites for this proposition does not support it.  In *Keepseagle v. Glickman*, 194 F.R.D. 1 (D.D.C. 2000), the court rejected an effort to link a credit discrimination class action involving Native Americans to a credit discrimination class action involving African Americans.  The court concluded that there were "no common events or transactions out of which the cases could grow" because the cases challenged "the acts of county commissions in entirely different regions of the country," none of which "would be at issue in both cases."  *Id.* at 3.  Here, by contrast, aspects of the same set of changes to the hiring process by the same decisionmakers are at issue in both cases.

---

[4] At any rate, Plaintiffs in both cases are similarly injured, since they are both seeking injunctive relief and damages stemming from their non-selection for new controller positions in 2014. "It . . . goes without saying that the courts can and should preclude double recovery by an individual." *Gen. Tel. Co. of the Nw. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318, 333 (1980).  Judicial economy would be served if only one judge were charged with avoiding double recoveries in the two cases.

Finally, Plaintiff gains no support from two recent decisions, *Trump v. Committee on Ways and Means*, 391 F. Supp. 3d 96 (D.D.C. 2019) and *Committee on the Judiciary v. McGahn*, 391 F. Supp. 3d 116 (D.D.C. 2019).[5] In *Trump*, the court concluded that the cases were not related because the cases "are likely to turn on different statutes and focus on different officials' actions done at different times." 391 F. Supp. 3d at 97. Specifically, one case involved whether federal law permitted the request for federal tax returns from a federal agency, while the other case involved whether a state law permitting access to state tax returns violated the First Amendment. *Id.* at 96. Under the "same event" prong the court rejected the argument that "both grow out of the Committee's request for the President's federal tax returns" because, in fact, "the earlier-filed case arises of the Committee's request for the federal tax returns while this case arises from the passage of the [state law]." *Id.* at 97. Thus, *Trump* is not analogous to this case because here both cases challenge, under the same federal law, the same federal officials' decisions adopting changes to the hiring process.

In *McGahn*, the court rejected the argument that two cases resulting from the "same Judicial Committee investigation" necessarily "grow out of the same event." *Id.* at 119, 122. While the same party filed both cases "to seek evidence for its ongoing investigation," the court concluded that one case grew out of the "issuance of the McGahn Subpoena, and McGahn's refusal to comply," while the other grew out of "efforts to obtain grand jury materials in and underlying the Special Counsel's Report" by filing "an ancillary grand jury action requesting the release of grand jury material protected by Federal Rule of Criminal Procedure 6(e)." *Id.* at 120, 122. This conclusion that the *plaintiff's motivation* for filing suit does not satisfy the "same

---

[5] He attempts to import those cases' discussion of factors relevant to the "common issues" prong into the "same event" prong. But *Trump*'s discussion of whether cases "involve different claims," 391 F. Supp. 3d at 96, and *McGahn*'s discussion of "different sets and types of evidence," 391 F. Supp. 3d at 119, relate to the "common issues" prong.

4

event" prong does not undermine the relatedness of cases like those at issue here, where the *subject matter of the litigation* grows from the same event.

In sum, challenges to two different aspects of the same set of changes to an agency's hiring process quintessentially fit Rule 40.5's declaration that it serves judicial economy for the same judge to handle cases that "grow out of the same event or transaction." Thus, the court need not even reach the "common issues of fact" prong to find the cases related.

## II.     Both *Brigida* and *Johnson* Involve Common Issues of Fact

Because both cases allege intentional discrimination in violation of Title VII based on aspects of the same set of changes to the hiring process, the cases also involve numerous "common issues of fact." LCvR 40.5(a)(3); Defs.' Mot. at 9-11. Plaintiff himself acknowledges that more than 20 virtually identical paragraphs of the complaints relate "common background facts for both cases" and that questions regarding "who influenced decision-making or what the motive for the decision was" involve overlapping facts to both cases. Pl.'s Response at 10 & n.4.[6] As Plaintiff explains, both cases allege that the FAA "engag[ed] in racial balancing" in decisions regarding changes to the controller hiring process, which allegedly constitutes intentional discrimination in violation of Title VII. Pl.'s Response at 1; *see also id.* at 2-3 (stating that *Johnson* claims "that the [biographical assessment] was intentionally used as a screening tool by the FAA to either improperly favor or disadvantage applicants based upon

---

[6] The filing of Plaintiff's Second Amended Complaint did not materially change this factual overlap. While reorganization and rephrasing removed five of the paragraphs Plaintiff acknowledged, 21 of the virtually identical paragraphs have simply been renumbered:

| | | | | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Johnson 1st Am. | 56 | 57 | 55 | 58 | 14, 51 | 52 | 53 | 59 | 60 | 61 | 62 | 63 | 110 | 64 | 65 | 66 | 68 | 77 | 69 | 70 | 72-73 | 74 | 75 | 76 | 84 | 86 |
| Johnson 2d Am. | 63 | 64 | 62 | 65 | __ | __ | __ | 66 | 67 | __ | 68 | 69 | 114 | 70 | 71 | 72 | 73 | 9 | 74 | 75 | 79-80 | 81 | 82 | 83 | 77 | __ |

5

race"). Thus, it is obvious that "the underlying facts themselves [are] common" here and do not merely involve "analyzing the same kinds of facts," *Dakota Rural Action v. U.S. Dep't of Agriculture*, No. 18-2852, 2019 WL 1440134, at *2 (D.D.C. Apr. 1, 2019),—both cases seek to probe the motives of the same decisionmakers for the same alleged racial bias[7] in the same set of decisions.[8]

In addition, Plaintiff acknowledges that the named plaintiffs are all members of both classes and estimates that 1,100-1,400 people are members of both putative classes. *See* Pl.'s Response at 9-10 & n. 3. While that is about half of the *Brigida* class, Plaintiff emphasizes that it is only about five percent of the *Johnson* class. *Id.* at 10 n.3. Because both classes allegedly involve unsuccessful applicants for hiring around the same time, the facts regarding more than 1,000 overlapping individuals will likely be relevant to injury, mitigation, damages, and injunctive relief in both class actions. *See* Defs.' Mot. at 10-11. Thus, the facts regarding these overlapping class members and the facts necessary to probe the intentional discrimination theories provide "common issues of fact" supporting assignment to the same judge. *See, e.g., Singh v. McConville*, 187 F. Supp. 3d 152, 156 (D.D.C. 2016); *Autumn Journey Hospice, Inc. v. Sebelius*, 753 F. Supp. 2d 135, 140 (D.D.C. 2010); *Assiniboine & Sioux Tribe of Fort Peck Indian Reservation v. Norton*, 211 F. Supp. 2d 157, 159 (D.D.C. 2002). Because these cases

---

[7] While Plaintiff characterizes *Brigida* as alleging "discrimination against CTI graduates," Pl.'s Response at 2, education status is clearly not a characteristic protected by Title VII. Accordingly, the proposed *Brigida* complaint clarifies that, like *Johnson*, it alleges that FAA intentionally discriminated against non-African American applicants. *See Brigida* Proposed 4th Am. Compl. ¶¶ 30, 40, 42, 48, 50, 100, 111, 113; *Johnson* 2d Am. Compl. ¶¶ 10, 16-17, 76, 88, 116, 149, 156, 158.

[8] While Plaintiff's Second Amended Complaint now formally asserts only a disparate impact cause of action, dropping the disparate treatment cause of action, *see* 2d Am. Compl. ¶¶ 154-62 (captioned "Disparate Impact Discrimination"), Plaintiff does not oppose Defendants' motion on the absence of a disparate treatment claim. Nor could he. The complaint remains replete with allegations of intentional disparate treatment, *see, e.g.*, *id.* ¶¶ 16, 31, 34, 76, 87, 115, 129, 158-60, Prayer for Relief ¶ D, and Plaintiff's counsel expects to re-allege an intentional discrimination cause of action after discovery. *See* Exhibit 1, Email from Michael Pearson to Galen Thorp (Nov. 26, 2019).

6

involve the same set of decisions, the same alleged discriminatory intent, and a significant number of overlapping class members, the factual overlap here is far greater than in *Keepseagle* and *Dakota Rural Action*, which merely involved the same agency program, *see Keepseagle*, 194 F.R.D. at 3, or the same type of facts, *Dakota Rural Action*, 2019 WL 1440134, at *3.

Finally, Plaintiff makes much of the fact that *Brigida* does not assert a disparate impact claim.  *See* Pl.'s Response at 9.  But an additional legal theory with a distinct factual basis does not "nullif[y]" relatedness where there are "clearly issues of fact that are common to both cases that are sufficient" to apply LCvR 40.5.  *Assiniboine*, 211 F. Supp. 2d at 160 (acknowledging that "differences may exist" between the related cases).  The presence of an additional theory does not mean that these cases place only "different sets and types of evidence at issue."  *See McGahn*, 391 F. Supp. 3d at 120-21 (comparing case requesting access to grand jury material while maintaining secrecy to case seeking to compel public testimony from a witness).  Indeed, in *McGahn*, the only common issue proffered was the plaintiff's "purpose behind . . . filing both actions," *id.* at 121, whereas here, the overlapping disparate treatment allegations and over 1,000 overlapping class members provide ample common issues of fact.

## CONCLUSION

For the reasons set forth above and in Defendants' motion, the Court should designate *Johnson* as related to *Brigida* and transfer the case to the Calendar and Case Management Committee for reassignment to the judge having the earlier case, pursuant to LCvR 40.5(c)(2).

DATED: December 9, 2019                    Respectfully submitted,

                                                JOSEPH H. HUNT
Assistant Attorney General

CARLOTTA P. WELLS
Assistant Branch Director
Civil Division, Federal Programs Branch

*/s/ Galen N. Thorp*
GALEN N. THORP (V.A. Bar No. 75517)
Senior Counsel
MICHAEL DREZNER (V.A. Bar No. 83836)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20530
Telephone: (202) 514-4781
Facsimile: (202) 616-8470
Email: galen.thorp@usdoj.gov

*Counsel for Defendants*